IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALAN FRANCIS, | ) | CASE NO. 1:13 CV 986 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| OHIO DEPARTMENT OF | ) | |
| REHABILITATION AND | ) | |
| CORRECTION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Alan Francis filed the above-captioned action under 42 U.S.C. § 1983 against the Ohio Department of Rehabilitation and Correction ("ODRC"), the Mansfield Correctional Institution ("MANCI"), the MANCI Medical Department, MANCI Warden Terry Tibbals, MANCI Health Care Administrator Marilyn Christopher, ODRC Assistant Health Care Administrator Precilla Rowe, MANCI Physician Julio Airaldi, MANCI Nurse Practitioner Rose Sterling, MANCI Nurse Jamie Edgell, MANCI Institutional Inspector Sharon Berry, ODRC Assistant Chief Inspector Mona Parks, ODRC Chief Inspector Gary Croft, ODRC Director Gary Mohr, and ODRC Medical Director Dr. John Doe. In the Complaint, Plaintiff alleges he was denied medication on four occasions after he was accused by medical personnel of misusing the medication. He asserts claims for retaliation and deliberate indifference to serious medical needs in violation of the First and Eighth Amendments. He seeks monetary damages and injunctive relief.

### Factual and Procedural Background

Plaintiff alleges he arrived at MANCI in April 2009 with a prior diagnosis of herniated spinal discs and degenerative disc disease. He was prescribed a regime of medications which included Tramadol, a narcotic pain reliever. Plaintiff was accused of "misusing" his medication in August 2010 and was given a conduct report. He does not explain the nature of the accusation. He claims that although he was found "not guilty" at the Rules Infraction Board hearing, his medications were changed. He indicates he was given other prescription medications but they were not as effective at relieving his pain as the Tramadol. He convinced medical personnel to change their minds, and on June 23, 2011, his original medications were restored.

Plaintiff was again charged with misuse of medication on April 30, 2012. Nurse Jamie Engell issued a conduct report which also charged Plaintiff with disobedience of a direct order, lying to an officer, and disrespect. Plaintiff claims he was found not guilty of all charges except disrespect because he admitted to calling Nurse Engell a "bitch." (ECF No. 1 at 7). He claims that medical personnel began to lower his dosages when the conduct report was issued and eventually withdrew him from Tramadol. He contends that when he was found "not guilty" of the charges, Dr. Airaldo, Nurse Practitioner Sterling, and Health Care Administrator Christopher advised him they believed their nurses and would alter his medications to avoid abuse. He claims his medications were changed in retaliation for grievances he filed. He also claims the new medications he was given were not effective to eliminate his pain.

Plaintiff alleges after the other medications did not prove effective, he again was prescribed Tramadol in October 2012. He contends, however, that his dosage was reduced, and the Tramadol was crushed before being administered to ensure he swallowed the medication. Plaintiff objected

to the crushed medication saying it upset his stomach.

On February 20, 2013, Plaintiff was accused of misusing psychiatric medication. A nurse alleged he attempted to conceal the pill in his cheek. She wrote a conduct report and this time, Plaintiff was found guilty of the charge at the Rules Infraction Board hearing. He contends he was not removed from this medication.

Plaintiff received a fourth conduct report for misusing Tramadol on March 7, 2013. He was originally found not guilty of the charges by a hearing officer but the full Rules Infraction Board overturned that decision and found him guilty. His pain medication was discontinued and he was prescribed 600 mg of Ibuprofen in its place. Plaintiff alleges this medication is virtually ineffective.

Plaintiff does not specifically identify the legal claims he is intending to assert. He indicates he was denied medication in retaliation for "accessing the right to grieve." (ECF No. 1 at 8). The Court liberally construes this claim as arising under the First Amendment right to redress the government. In addition, Plaintiff claims he suffered severe pain without the Tramadol. The Court liberally construes this as an attempt to assert a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. No other claims are apparent on the face of the Complaint.

### Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d

194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## Discussion

### A. Parties

As an initial matter, Plaintiff does not include any allegations specifically connecting Warden Tibbals, Health Care Administrator Marilyn Christopher, ODRC Assistant Health Care Administrator Precilla Rowe, MANCI Institutional Inspector Sharon Berry, ODRC Assistant Chief Inspector Mona Parks, ODRC Chief Inspector Gary Croft, ODRC Director Gary Mohr, and ODRC Medical Director Dr. John Doe to the alleged violation of his constitutional rights. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally

involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Plaintiff's Complaint is stated almost entirely in the passive voice, giving no clue to the Court or the Defendants which of them is being accused of committing or participating in specific actions. Because Federal Civil Rule 8 requires Plaintiff to allege facts suggesting each Defendant committed the acts of which they are accused, Plaintiff's Complaint fails to state a claim for relief against these Defendants.

It is possible Warden Tibbals, ODRC Assistant Health Care Administrator Precilla Rowe, the ODRC Director Mohr, and the ODRC Medical Director are named as Defendants in this action because they employ or supervise other Defendants. *Respondeat superior* is not a proper basis for liability under § 1983. *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Supervisors cannot be held liable based solely on the right to control employees, nor even "simple awareness of employees' misconduct." *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874). Plaintiff has not included any allegations suggesting Tibbals, Rowe, Mohr, or the ODRC Medical Director had personal knowledge of the incidents or directly participated in the conduct. They cannot be held personally liable in this case simply because they supervised other

individuals who Plaintiff alleges violated his constitutional rights.

Similarly, it is possible Plaintiff named MANCI Institutional Inspector Sharon Berry, ODRC Assistant Chief Inspector Mona Parks, and ODRC Chief Inspector Gary Croft because they issued unfavorable responses to his grievances. Responding to a grievance or otherwise participating in the grievance procedure, however, is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee*, 199 F.3d. at 300. The denial of the grievance is not the same as the denial of a request to receive medical care. *Id.*

Furthermore, MANCI, the MANCI Medical Department and the ODRC are not proper parties to this action. First, MANCI is not *sui juris*. It is a facility owned and operated by the ODRC. It cannot sue or be sued under § 1983. *See Yahnke v. Nixon*, No. 1:10 CV 1470, 2010 WL 3420650, *1 (N.D. Ohio Aug. 27, 2010); *Elkins v. Summit County, Ohio*, No. 5:06-CV-3004, 2008 WL 622038, *6 (N.D. Ohio Mar. 5, 2008). Because it is a subunit of the ODRC, which is a state agency, the claims against MANCI are construed against the State of Ohio.

Similarly, the MANCI Medical Department is not a proper Defendant. It is a subunit of MANCI. To the extent Plaintiff is suing the individuals in the medical department in their official capacities, his claims are construed as against the State of Ohio. To the extent Plaintiff has specific claims against specific individuals in the Medical Department, and he is seeking to hold them liable in their individual capacities, he must name them as separate Defendants and specify which actions they personally committed which he believes violated his constitutional rights. He cannot lump them altogether and hope to impute the conduct of one Defendant to other individuals in the Department without allegations of personal misconduct.

While the claims against MANCI, the MANCI Medical Department and the ODRC are all

construed against the State of Ohio, the state is absolutely immune from suits for damages. The Eleventh Amendment is an absolute bar to the imposition of liability upon states and state agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).

Only Dr. Airaldi, Nurse Practitioner Sterling, and Nurse Jamie Edgell were specifically mentioned in the body of the Complaint. The Court will only consider Plaintiff's First and Eighth Amendment claims with respect to these three Defendants.

### B. Retaliation

Plaintiff first alleges Defendants retaliated against him for filing grievances. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

#### 1. Protected Conduct

The first element that Plaintiff must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment. *Id.* at 394–95. Plaintiff claims the Defendants retaliated against him for "accessing his right to grieve." Filing a grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Filing frivolous grievances, however, is not protected conduct. *Hill*, 630 F.3d at 472. Plaintiff gives no indication of the content of the grievance

or grievances, against whom they were asserted, to whom they were asserted and what the outcome of the grievance was. Absent any information about the grievance, it is impossible to determine whether Plaintiff was engaged in protected conduct.

### 2. Adverse Action

The second element that Plaintiff must establish for his retaliation claim is that the Defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff does not have to show actual deterrence. *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398. While this element is not an overly difficult one for the Plaintiff to meet, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Id.*

Here, Plaintiff alleges his pain medication was discontinued, leaving him in severe pain from herniated discs and degenerative disc disease. Denial of medical care would be an adverse action that would be capable of deterring a person of ordinary firmness from engaging in protected conduct. He has satisfied this element.

### 3. Motivation for Adverse Action

Plaintiff, however, failed to demonstrate the third element requiring the adverse action to have been motivated, at least in part, by his participation in protected conduct. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). This element addresses whether the Defendants' subjective

motivation for taking the adverse action was at least in part to retaliate against Plaintiff for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399. If Plaintiff can show that the Defendants' adverse actions were at least partially motivated by the prisoner's protected conduct, then the burden shifts to the Defendants to show that they would have taken the same action even absent such protected conduct. *Id.* at 399.

There is no indication in the Complaint that the adverse actions described above were motivated by the protected conduct in which Plaintiff alleged he engaged. Plaintiff himself indicates his medication was changed because he was accused of misusing it. There are no factual allegations in the Complaint suggesting these Defendants knew about grievances filed by the Plaintiff, or that they were motivated by these grievances to change his medications. Plaintiff has not demonstrated the third element of his claim, and therefore fails to state a claim for retaliation.

## C. Eighth Amendment

Finally, Plaintiff asserts Defendants were deliberately indifferent to his serious medical needs. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9.

Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

While Plaintiff may arguably meet the objective standard for this claim with his allegations of back pain caused by degenerative disc disease, he fails to allege a claim against Dr. Airaldi, Nurse Practitioner Sterling, and Nurse Jamie Edgell that meets the subjective standard. The Eighth Amendment does not entitle prisoners to unfettered access to the medical treatment of their choice. *See Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103-104). Although Plaintiff alleges he was taken off of the Tramadol, a narcotic substance, after he had been reported to be misusing it, he was provided with other prescription medications. Plaintiff claims those were not as effective as the Tramadol. After repeated requests, he was placed back on the Tramadol only to be accused again of misusing the medication. When it was reordered a second time, the medical staff ordered it to be crushed first so that Plaintiff could not in some way secret it away during pill call. Plaintiff claims the crushed medication upset his stomach. He was accused on two other occasions of not taking his medications as prescribed, and misusing them. After the fourth time, he was removed from the narcotic.

Prison staff are not only responsible for ensuring that Plaintiff takes his medications as prescribed, but they are also responsible for the safety and security of the other inmates. Narcotics prescriptions are closely monitored to ensure they are used properly by the inmates for whom they

were intended. While Plaintiff may have preferred Tramadol, his repeated charges of misuse of medication prompted the prison officials to change his medication. There are no allegations in the Complaint which suggest these three Defendants had the requisite subjective intent to cause Plaintiff pain, as opposed to protecting Plaintiff and the other inmates from the consequences of misusing narcotic medications. Plaintiff failed to satisfy the subjective element of an Eighth Amendment claim against these Defendants.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: _September 24, 2013_

---

[1]  28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

PL-2 (7/96) N.D. OHIO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

## INSTRUCTIONS FOR PAYMENT OF PRISONER FILING FEE AND SUBSEQUENT INSTALLMENT PAYMENTS

---

The prisoner shown as the plaintiff on the attached order has filed a civil action in forma pauperis in this court and owes the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

> The initial partial fee listed on the attached order should be deducted by the prison cashier's office from the prisoner's account, when funds are available therein, until the initial partial fee is paid. A check (or checks) in the appropriate amount(s) should be attached to a form like that accompanying these instructions and sent to the address indicated below.
>
> Following the payment of the initial partial fee and continuing thereafter until the full fee has been paid, monthly payments of 20% of the preceding month's income credited to the prisoner's account should be deducted and forwarded to the court each time the amount in the account exceeds $10.

If the prisoner has filed more than one complaint in this district, (s)he is required to pay a fee in each case. The prison cashier's office shall make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis status and these instructions. **The prisoner's name and case number must be noted on each remittance.**

Checks are to be made payable to:

> **Clerk, U.S. District Court**

Checks are to be sent to:

> **Prisoner Accounts Receivable**
> **Carl B. Stokes United States Courthouse**
> **801 West Superior Avenue**
> **Cleveland, Ohio 44113**